# Supreme Court of Louisiana

The Opinions handed down on the **30th day of January, 2018**, are as follows:

**PER CURIAM**:

2016-KH-0949    STATE EX REL. JOHN ESTEEN v. STATE OF LOUISIANA (Parish of Jefferson)

Because three of relator's sentences are for terms of imprisonment that are no longer authorized by law, and a more lenient penalty provision applies retroactively in accordance with La.R.S. 15:308(B), relator's remedy is by resentencing in the district court pursuant to his motion to correct illegal sentences. Accordingly, we reverse the district court's denial of relator's motion and remand for resentencing on these three counts pursuant to the more lenient penalty provisions that were enacted by the legislature in 2001 La. Acts 403, which the legislature later declared in La.R.S. 15:308(B) apply retroactively under the circumstances enumerated in that section. REVERSED AND REMANDED.

JOHNSON, C.J., additionally concurs and assigns reasons.
WEIMER, J., dissents and assigns reasons.
GUIDRY, J., dissents.
CLARK, J., dissents for the reasons assigned by Justice Weimer and assigns additional reasons.
CRICHTON, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 16-KH-0949

## STATE EX REL. JOHN ESTEEN

## VERSUS

## STATE OF LOUISIANA

## ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

**PER CURIAM**

Relator John Esteen, along with 22 others, was charged with several drug and racketeering offenses committed in 1998 and 1999. Relator was ultimately found guilty of two counts of possession of cocaine over 400 grams, conspiracy to possess cocaine over 400 grams, and attempted possession of cocaine over 400 grams. The district court sentenced him to consecutive terms of imprisonment at hard labor totaling 150 years. His convictions and sentences were affirmed on appeal. *State v. Esteen*, 01-0879 (La. App 5 Cir. 5/15/02), 821 So.2d 60, *writ denied*, 02-1540 (La. 12/13/02), 831 So.2d 983.

In 2016, relator filed a motion to correct illegal sentences seeking the benefit of more lenient penalty provisions that were enacted by the legislature in 2001 La. Acts 403 (effective June 15, 2001), which the legislature later declared in La.R.S. 15:308(B) (effective May 16, 2006) "shall apply to the class of persons who committed crimes, who were convicted, or who were sentenced" in accordance with enumerated provisions, including those pursuant to which relator was sentenced on three counts. The district court denied the motion and the court of

appeal denied writs, relying on *State v. Dick*, 06-2223 (La. 1/26/07), 951 So.2d 124.

In *State v. Dick*, this court was faced with an apparent conflict between La.R.S. 15:308(B) and (C) because the former mandated retroactive application of reduced penalties to offenders already sentenced while the latter entitled offenders to seek the benefit of the ameliorative sentencing provisions from the Louisiana Risk Review Panel. *Dick*, 06-2223, pp. 9–10, 951 So.2d at 130–31. In light of this conflict, the court considered whether La.R.S. 15:308(B) granted district courts the authority to modify previously imposed sentences by mandating retroactive application of the reduced penalty provisions. A majority of the court found that resentencing an offender in order to retroactively apply the more lenient penalty provisions to an offender whose conviction and sentence are final would be, in effect, commutation of a legal and final sentence. *Dick*, 06-2223, pp. 12–13, 951 So.2d at 132. The *Dick* majority further found that the power of commutation falls exclusively within the executive branch of government. *Id.*, 06-2223, p. 13, 951 So.2d at 132. Therefore, the majority determined that the legislature, which is aware of the constitutional separation of powers, did not intend for La.R.S. 15:308(B) to confer that authority on the district courts, and the majority further found that an offender's exclusive remedy was to apply to the Louisiana Risk Review Panel pursuant to former La.R.S. 15:308(C). *Dick*, 06-2223, pp. 13–15, 951 So.2d at 132–33. After *Dick*, the legislature repealed La.R.S. 15:308(C) and eliminated the Louisiana Risk Review Panel in 2012 La. Acts 123. Then, in 2014 La. Acts 340, the legislature reenacted La.R.S. 15:308(C) so that it now provides: "Such persons shall be entitled to apply to the committee on parole pursuant to R.S. 15:574.2."

Thus, after the reenactment, the interpretative problem posed by the apparent

conflict between La.R.S. 15:308(B) and (C) remains. Specifically, La.R.S. 15:308(B) mandates that the ameliorative provisions shall apply retroactively to offenders who are already sentenced while La.R.S. 15:308(C) entitles an offender to apply to the committee on parole, which will, "taking into consideration the risk of danger the applicant would pose to society if released from confinement," issue a recommendation to the Board of Pardons regarding "*whether* the applicant is eligible for a reduction." La.R.S. 15:574.2(I)(1) (emphasis added).

Relator contends that La.R.S. 15:308(A) and (B)[1] render his sentences for possession of cocaine over 400 grams and attempted possession of cocaine over 400 grams illegal. Relator seeks correction of what he characterizes as now illegal sentences pursuant to La.C.Cr.P. art. 881.5, which provides, "On motion of the state or the defendant, or on its own motion, at any time, the court may correct a sentence imposed by that court which exceeds the maximum sentence authorized

---

[1] These sections now provide:

> A. (1) The legislature hereby declares that the provisions of Act No. 403 of the 2001 Regular Session of the Legislature provided for more lenient penalty provisions for certain enumerated crimes and that these penalty provisions were to be applied prospectively.
>
> (2) The legislature hereby further declares that Act No. 45 of the 2002 First Extraordinary Session of the Legislature revised errors in penalty provisions for certain statutes which were amended by Act No. 403 of the 2001 Regular Session of the Legislature and that these revisions were to be applied retroactively to June 15, 2001, and applied to any crime committed subject to such revised penalties on and after such date.
>
> B. In the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature shall apply to the class of persons who committed crimes, who were convicted, or who were sentenced according to the following provisions: R.S. 14:56.2(D), 62.1(B) and (C), 69.1(B)(2), 70.1(B), 82(D), 91.7(C), 92.2(B), 92.3(C), 106(G)(2)(a) and (3), 106.1(C)(2), 119(D), 119.1(D), 122.1(D), 123(C)(1) and (2), 352, and 402.1(B), R.S. 15:529.1(A)(1)(b)(ii) and (c)(ii), 1303(B), and 1304(B), R.S. 27:262(C), (D), and (E), 309(C), and 375(C), R.S. 40:966(B), (C)(1), (D), (E), (F) and (G), 967(B)(1), (2), (3), and (4)(a) and (b), and (F)(1), (2), and (3), 979(A), 981, 981.1, 981.2(B) and (C), and 981.3(A)(1) and (E), and Code of Criminal Procedure Article 893(A) prior to June 15, 2001, provided that such application ameliorates the person's circumstances.

by law." The state contends that defendant is not entitled to be resentenced and his only avenue for relief is through the committee on parole in accordance with La.R.S. 15:308(C) in conjunction with La.R.S. 15:574.2(I)(1).

This court erred in *State v. Dick* to the extent we resolved the tension between these provisions by finding that the *only* avenue to gain the benefit of the more lenient penalty provisions retroactively is by application to the Risk Review Panel at that time (subsequently amended to authorize application to the committee on parole). Instead, we find these provisions can be harmonized in a way that avoids the separation of powers problem on which the holding of *Dick* depended.

In *Dick*, the majority equated the judicial amendment of a final sentence in accordance with a retroactive legislative act to "allow[ing] the judiciary to exercise the power of commutation." *Dick*, 16-2223, p. 12, 951 So.2d at 132. That conclusion, however, failed to take into account three principles. First, that it is the legislature's "exclusive authority to determine length of punishment for crimes classified as felonies." *Bosworth v. Whitley*, 627 So.2d 629, 633 (La. 1993). Second, that "[o]ne of the traditional, inherent and exclusive powers of the judiciary is the power to sentence. . . . [T]he fixing of penalties is purely a legislative function, but the trial judge has the discretion to determine the appropriate sentence *within the sentencing range fixed by the legislature*." *State v. Rome*, 96-0991, pp. 3–4 (La. 7/1/97), 696 So.2d 976, 978 (emphasis added, internal citations and footnote omitted). Third, because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 21 (La. 7/1/08), 998 So.2d 16, 31.

4

While the power of commutation is bestowed on the executive branch,[2] "[a] pardon is a matter of grace from the state and a function of the executive branch of government, not subject to limitation or control from the other branches." *Bryant v. Louisiana State Pardon Bd.*, 378 So.2d 180, 181 (La. App. 1 Cir. 1979). In addition, there are no restrictions on the exercise of the executive's traditional prerogative to ameliorate harsh penalties *otherwise provided by law* for offenders who have proved their ability to rehabilitate in a custodial environment." *Bosworth*, 627 So.2d at 633 (emphasis added).

Here, the legislature, "[i]n the interest of fairness in sentencing," declared in La.R.S. 15:308(B) its intention that the more lenient penalty provisions be applied retroactively to those persons "who were sentenced according to [listed provisions, including La.R.S. 40:967(F)(1)] prior to June 15, 2001, provided that such application ameliorates the person's circumstances." The declared interest in fairness in sentencing is not equivalent to a matter of grace,[3] and nothing in La.R.S. 15:308 limits or controls the executive branch's exercise of its prerogatives. Instead, the legislature exercised its exclusive authority to determine the length of punishment for crimes classified as felonies, and further declared those more lenient penalties shall be applied retroactively to those already

---

[2] *See* La. Const. art. 4, § 5(E)(1) ("The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses."); *see also* La.Const. art. II, § 2 ("Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.").

[3] *Cf. Way v. Superior Court*, 74 Cal.App.3d 165, 177, 141 Cal.Rptr. 383, 391 (Ct. App. 3 Dist. 1977) ("We note that the motivation behind section 1170.2 is not consistent with commutation. The Legislature's objective, admittedly one within its power, is to restructure punishments for criminal conduct and to make them uniform to the extent reasonably possible. Having accomplished this as to future offenders, it then sought to avoid a condition which it deemed both undesirable and inconsistent with the concept of uniformity, that felons concurrently serving sentences for identical offenses be subject to disparate terms solely because of the time when they committed their crimes. It undertook no act of mercy, grace, or forgiveness toward past offenders, such as characterizes true commutations.").

5

sentenced. Nothing in the constitution prohibits the legislature from enacting more lenient penalty provisions and declaring they be applied retroactively in the interest of fairness in sentencing.

At the time relator committed the offenses of possession of cocaine over 400 grams and attempted possession of cocaine over 400 grams, the penalty provisions required that relator be sentenced to terms of imprisonment at hard labor for not less than 30 years and not more than 60 years, and not more than 30 years, respectively. *See Esteen*, 01-0879, pp. 25–26, 821 So.2d at 76. Relator was sentenced to 50 years imprisonment at hard labor for each count of possession, and to 25 years imprisonment at hard labor for attempted possession. In 2001, La.R.S. 40:967(F)(1)(c) was amended to reduce the penalty for possession of cocaine over 400 grams to 15 to 30 years (and thereby reduce the penalty for the attempted offense to not more than 15 years. Therefore, three of relator's sentences are for terms of imprisonment that are no longer authorized by law.

Under Louisiana law, the term "illegal sentence" is "primarily restricted to those instances in which the term of the prisoner's sentence is not authorized by the statute or statutes which govern the penalty for the crime of conviction." *Montgomery v. Louisiana*, 577 U.S. —, —, 136 S.Ct. 718, 726, 193 L.Ed.2d 599 (2016) (internal quotes omitted) (quoting *State v. Mead*, 14-1051, p. 3 (La. App. 4 Cir. 4/22/15), 165 So.3d 1044, 1047). Because three of relator's sentences are for terms of imprisonment that are no longer authorized by law, and a more lenient penalty provision applies retroactively in accordance with La.R.S. 15:308(B), relator's remedy is by resentencing in the district court pursuant to his motion to correct illegal sentences.[4] Accordingly, we reverse the district court's denial of

---

[4] In fact, it appears that the legislature has created two distinct avenues for relief. First, as in this case, when an offender's sentence exceeds the maximum sentence allowed under the new penalty provisions, then that sentence is truly illegal and must be corrected by the district court.

6

relator's motion and remand for resentencing on these three counts pursuant to the more lenient penalty provisions that were enacted by the legislature in 2001 La. Acts 403, which the legislature later declared in La.R.S. 15:308(B) apply retroactively under the circumstances enumerated in that section.

**REVERSED AND REMANDED**

---

Second, when a sentence falls within the ranges of both the harsher and more lenient penalty provision (e.g. an individual sentenced to 15 years imprisonment for a crime that initially carried a range of 15–30 years, and where the ameliorated range falls between 0–15 years), that sentence is not illegal and that offender's avenue for relief is by application to the committee on parole pursuant to La.R.S. 15:308(C), through which, as we found in *State v. Dick*, "the legislature is suggesting to the executive branch that it should consider these ameliorative sentencing provisions when reviewing the offenders' applications . . . ." *Id.*, 06-2223, p. 14, 951 So.2d at 133.

SUPREME COURT OF LOUISIANA

No. 2016-KH-0949

STATE EX REL. JOHN ESTEEN

VERSUS

STATE OF LOUISIANA

ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL
DISTRICT COURT, FOR THE PARISH OF JEFFERSON

**JOHNSON, C.J.** additionally concurs and assigns reasons.

I fully agree with the majority opinion, which correctly overrules this court's opinion in *State v. Dick*, 06-2223 (La. 1/26/07), 951 So. 2d 124. I dissented in *Dick*, believing the majority in that case ignored a clear mandate from the legislature. The majority in this case now corrects that error.

As I explained in my dissent in *Dick*, the legislature clearly expressed its intent in La. R.S. 15:308(B) by stating that, in the interest of fairness in sentencing, the more lenient penalty provisions ***shall*** apply to persons who were sentenced prior to June 15, 2001. 951 So. 2d at 134 (Johnson, dissenting). The majority in this case correctly interprets the provisions in La. R.S. 15:308(B) and (C) to reach the result intended by the legislature. To hold defendant was limited to seeking relief from the committee on parole pursuant to La. R.S. 15:308(C), as suggested by the state, would create a completely discretionary system of implementation. The committee on parole is not required to apply the ameliorative provisions. Rather, the committee is directed to evaluate La. R.S. 15:308 applications and, "taking into consideration the risk of danger the applicant would pose to society if released from confinement," issue recommendations to the Board of Pardons regarding "whether the applicant is eligible for a reduction," as if La. R.S. 15:308 regulated parole eligibility, rather than

1

mandatory retroactively reduced sentencing ranges.

The majority's opinion in this case is also consistent with the underlying reasoning of this court in *State v. Mayeux*, 01-3195 (La. 6/21/02), 820 So.2d 526. In *Mayeux*, defendant was arrested and charged with a violation of La. R.S. 14:98(E), DWI fourth offense. Subsequent to defendant's arrest, the legislature amended the statute's sentencing provisions, radically changing the way in which the offender serves the sentence imposed by the court. This court held that the district court erred in sentencing the defendant under the penalty provisions as they existed at the time of the defendant's DWI offense, rather than at the time of his conviction. In so doing, this court reasoned that although Louisiana courts have generally held that the law in effect at the date of the offense should control, the statutory language and legislative purpose behind the statutory amendment of La. R.S.14:98(G) dictated that the amendment be applied to those defendants having committed an offense prior to the effective date of the amendment. 820 So.2d at 529. Additionally, this court recognized the amendment was passed "in an effort to address the societal costs of drunken driving and a high per capita prison population." *Id*. at 527. Similarly, in this case, the language in La. R.S. 15:308(B) clearly directs when the amended penalty provisions are applicable by mandating they be applied retroactively to those offenders already sentenced. Further, in my view, the ameliorative amendments represent a significant shift in policy relative to drug offenses in this state and demonstrate that the legislature has chosen to impose more lenient sentencing provisions. The legislative enactment of La. R.S. 15:308(B) addressed the inequity between penalties for identical offenses committed before and after the amendments went into effect, by giving offenders who received the harsher sentences the opportunity to have their sentences reduced in accordance with the ameliorative

2

legislation. *See Dick*, 951 So. 2d at 135 (Johnson, dissenting).

When courts impose sentences exceeding the express sentencing provisions—either by mistake or, as in this case, because of a retroactive legislative mandate—the sentence must be considered illegal and courts are duty-bound to correct those sentences. Because defendant's sentences now exceed those set forth by the legislature, his sentences must be considered illegal and subject to correction by the courts. For these reasons and the reasons assigned by the majority, I find that defendant and other similarly-situated inmates are entitled to seek relief through the courts.

# SUPREME COURT OF LOUISIANA

## NO. 2016-KH-0949

## STATE EX REL. JOHN ESTEEN

### VERSUS

## STATE OF LOUISIANA

*ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL
DISTRICT COURT, FOR THE PARISH OF JEFFERSON*

**WEIMER, J.**, dissenting.

The majority's opinion ignores a statutory mandate enacted by the legislature
and usurps the authority constitutionally granted to the executive branch. As a result,
the statutorily-mandated vetting by the executive branch's committee on parole,
which is tasked with determining whether the offender presents a danger to society,
is stricken from the statute.

The legislature carefully established a vetting procedure, which involves an
evaluation by the committee on parole prior to an offender receiving the benefit of a
reduction in sentence. However, after this court's majority opinion for reducing
certain criminal sentences, what is the role of the committee on parole? According
to the majority opinion, there is no role whatsoever.

According to the mandate of the legislature in La. R.S. 15:308(C), however,
any reduction in sentence or release from confinement is entirely within the discretion
of the committee on parole, after the committee considers whether the offender has
served sufficient time and the committee determines whether the offender presents
a "risk of danger … to society if released from confinement." La. R.S. 15:574.2(I)(1).
According to this court's majority opinion, instead of the committee on parole making

a case-by-case evaluation of an offender's danger to society, the court system is empowered to release an offender, and to do so without evaluating whether the offender has demonstrated conduct that presents a danger to society. Under the holding of the majority opinion, an offender's release is apparently automatic after petitioning a court to turn back the clock by applying shorter periods of incarceration than those that lawfully applied when the offender was sentenced.

This court has previously examined whether, based on the legislature's subsequent reduction of a criminal penalty, the judiciary can reduce criminal sentences that were lawful when imposed. See **State v. Dick**, 06-2223, 06-2226 (La. 1/26/07), 951 So. 2d 124. This court concluded: "[A]llowing the courts to reduce the offenders' final sentences would, in effect, commute a valid sentence, a power the legislature knows to be constitutionally reserved to the executive branch." *Id.*, 06-2223, 06-2226 at 14, 951 So.2d at 133. In so ruling, this court was aligned with a majority of jurisdictions which have found that the power to reduce final sentences belongs to the executive branch.[1]

---

[1] See **State v. Philipps**, 521 N.W.2d 913, 917 (Neb. 1994) ("[T]o interpret a statute such that it would reduce, without the approval of the Board of Pardons, a sentence imposed prior to its enactment would render the statute unconstitutional, for it would permit a legislative invasion of the power of commutation constitutionally consigned to the board."); **State v. Cummings**, 386 N.W.2d 468, 472 n.2 (N.D. 1986) ("Legislation lessening punishment may not be applied to final convictions because this would constitute an invalid exercise by the Legislature of the executive pardoning power."); **Bossie v. State**, 488 A.2d 477, 480 (Me. 1985) (holding that the power to commute sentences was "explicitly and exclusively granted to the executive."); **Commonwealth v. Sutley**, 378 A.2d 780, 782, 789 (Pa. 1977) (holding that a statute reducing sentences for marijuana possession "operated as a legislative impairment of existing final legal judgments," while also noting "there is no power of pardon or commutation in the legislature and... the power is specifically and singularly granted to the executive branch"); **State ex rel. Smith v. Blackwell**, 500 S.W.2d 97, 103 (Tex. Crim. App. 1973) (holding that a statute reducing the sentences for marijuana offenses resulted in "commutation" and, therefore, violated the Texas Constitution, which "plac[ed] the power of clemency in the hands of the Governor, acting upon the recommendation of the Board of Pardons and Paroles."); **People v. Herrera**, 516 P.2d 626, 628 (Colo. 1973) (holding that "[t]he power of commutation ... is the power to reduce punishment from a greater to a lesser sentence," and this power was exclusive to the governor); **Whittington v. Stevens**, 73 So. 2d 137, 140 (Miss. 1954) (holding that, although "the legislature was prompted by the highest humanitarian motives," statute providing for reduction of sentence based on physical disability of prisoners was "held to be unconstitutional as an infringement upon the pardoning power vested in the governor.").

The majority of this court now claims that **Dick** was wrongly decided because: 1) the legislature is authorized to set penalties; 2) the judiciary has the power to impose sentences; and 3) anything not prohibited by the constitution is allowed. See **State ex rel. John Esteen v. State**, 16-0949, slip op. at 4 (La. 1/30/2018). These three principles are certainly important, but the majority has misapplied them. By giving a straightforward effect to La. R.S. 15:308, there is no justification for overruling **Dick** because La. R.S. 15:308 contains a proper respect for the separation of powers.[2] Indeed, the majority's opinion recites–with a parsing that inescapably requires involvement of the committee on parole–how the legislature invokes the authority of the executive branch of government:

> Specifically, La. R.S. 15:308(B) mandates that the ameliorative provisions shall apply retroactively to offenders who are already sentenced while La. R.S. 15:308(C) entitles an offender to apply to the committee on parole, which will, "taking into consideration the risk of danger the applicant would pose to society if released from confinement," issue a recommendation to the Board of Pardons regarding "**whether** the applicant is eligible for a reduction." La. R.S. 15:574.2(I)(1) (emphasis added).

**Esteen**, slip op. at 3.

Notwithstanding the legislative mandate just quoted, the majority circumvents the committee on parole and tasks the judiciary with reducing lawfully imposed sentences. Such result requires ignoring the entirety of Section C of La. R.S. 15:308, by which the legislature invokes the authority of the executive branch of government, specifically, the authority of the committee on parole. In so doing, the majority also disregards another fundamental precept dictated by the legislature: "When the

---

[2] See La. Const. art. II, § 2 ("Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."); see also La. Const. art. IV, § 5(E)(1) ("The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, [and] pardon those convicted of offenses against the state ... .").

3

wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4.

The result reached by the majority is all the more perplexing when one recognizes that the majority gives no effect to the committee on parole (whose authority is specifically mentioned in Section C of La. R.S. 15:308), yet simultaneously declares that the petitioner's sentence can be changed by the judiciary via a statute that is nowhere mentioned in La. R.S. 15:308–namely La. C.Cr.P. art. 881.5 (dealing with correction of illegal sentences).[3] To be fair, in a footnote, the majority purports to allow some authority to the committee on parole, inasmuch as the majority finds there is a class of sentences which "falls within the ranges of both the harsher and more lenient penalty provision[s]," and the majority declares that for such sentences, an "offender's avenue for relief is by application to the committee on parole." **Esteen**, slip op. at 6-7 n.4. In its footnote, however, the majority again does no service to longstanding law, as the majority's solution for a second class of offenses amounts to an advisory opinion for facts not presented here. "It is well-settled in the jurisprudence of this state that courts will not decide abstract, hypothetical or moot controversies or render advisory opinions with respect to such

---

[3] It should also be noted that sentences that were for a lawful duration when imposed, such as the relator's sentences, are not illegal sentences:

> This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. **State v. Wright**, 384 So.2d 399, 401 (La. 1980). A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense. **State v. Narcisse**, 426 So.2d 118, 130–131 (La.1983).

**State v. Sugasti**, 01-3407, p. 4 (La. 6/21/02), 820 So.2d 518, 520.

Here, by derogating from these previously-recognized principles, the majority opinion profoundly alters and expands the concept of illegal sentences for purposes of La. C.Cr.P. art. 881.5.

controversies." **Shepherd v. Schedler**, 15-1750, p. 13 (La.1/27/16), 209 So.3d 752, 764.

For the facts at hand, I find the legislature has given a straightforward solution. In Section B of La. R.S. 15:308, the legislature has made available reduced sentences for certain non-violent offenses. The legislature has not made reduction of sentences for those crimes automatic, nor has the legislature tasked the courts with deciding whether to reduce such sentences or to release any offender. Instead, in Section C of La. R.S. 15:308, the legislature invokes the authority and duties of the parole board. Among those duties, one is noteworthy: "[T]o determine the time and conditions of release on parole of any person who has been convicted of a felony and sentenced to imprisonment, and confined in any penal or correctional institution in this state." La. R.S. 15:574.2(D)(1).[4]

Regardless of whether any judge, myself included, may personally agree with efforts to avoid Louisiana being castigated as the "incarceration capital" of the nation,[5] in our legal system, judges must act within the bounds established by the legislature and the constitution. Through its latest iteration of La. R.S.15:308, the legislature wisely recognized what the majority of this court does not. Release from

---

[4] Parenthetically, I note that the role of Louisiana's committee on parole differs from the role of California's Community Release Board, as the latter's role is described in **Way v. Superior Court**, 74 Cal. App. 3d 165 (Ct. App. 1977). For justification in overruling this court's decision in **Dick**, the majority relies heavily on **Way**. However, as described in **Way**, newly enacted legislation required, as the default ruling of the Community Release Board, to set a release date consistent with more recently enacted and lesser periods of incarceration. **Way**, 74 Cal. App.3d at 171-72. Only if "two members of the Community Release Board ... determine that ... [he] should serve a [longer] term" would an offender be required to serve a longer term. **Id.** at 172-73. Thus, the procedure envisioned by the Louisiana Legislature provides no default ruling by the committee on parole and hence empowers the committee with greater discretion.

[5] See generally *Louisiana could soon lose title as incarceration capital, with or without reforms*, The Advocate (May 23, 2017), available at http://www.theadvocate.com/baton_rouge/news/politics/legislature/article_c79ad504-3f23-11e7-ac58-fb249f8e45fe.html.

or reduction of a lawfully-imposed sentence should not be automatic (as the majority of this court presently holds), but is instead made contingent on the case-by-case determination of the committee on parole (a component of the executive branch of government) and satisfaction of any conditions imposed by that committee. A most unfortunate result of the majority's ruling, which is tantamount to usurping the powers of the executive branch, but without the review procedures normally performed by the executive branch, is that potentially dangerous offenders will be released without the statutorily-mandated vetting. Thus, I respectfully dissent.

# SUPREME COURT OF LOUISIANA

## No. 2016-KH-0949

## STATE EX REL. JOHN ESTEEN

### VERSUS

## STATE OF LOUISIANA

## ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, FOR THE PARISH OF JEFFERSON

**GUIDRY, J., dissents.**

SUPREME COURT OF LOUISIANA

NO. 16-KH-0949

STATE EX REL. JOHN ESTEEN

V.

STATE OF LOUISIANA

ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL
DISTRICT COURT FOR THE PARISH OF JEFFERSON

**CLARK, J**., **Dissents for the reasons assigned by Justice Weimer and assigns additional reasons.**

I respectfully dissent for the reasons assigned by Justice Weimer. I write separately to express my disagreement with a broad interpretation of La. R.S. 15:308. I believe that incarcerated inmates serving sentences pursuant to plea agreements with the state should not be eligible to seek a reduction in their sentences under La. R.S. 15:308. Louisiana Code Crim. Proc. Art. 881.2 (A)(2) expressly provides that "[t]he defendant cannot appeal or seek review of a sentence imposed inconformity with a plea agreement which was set forth in the record at the time of the plea." Once a defendant is sentenced pursuant to a valid plea agreement, he is bound by the terms of the agreement and should have to serve that sentence.

**SUPREME COURT OF LOUISIANA**

**NO. 16-KH-0949**

**STATE EX REL. JOHN ESTEEN**

**V.**

**STATE OF LOUISIANA**

**ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**Crichton, J., additionally concurs and assigns reasons.**

I agree with and join in the per curiam in this matter. I write separately to acknowledge that I am cognizant of the logistical challenges this opinion may pose. However, I am ultimately convinced that the judiciary's "traditional, inherent, and exclusive" power to sentence within the range fixed by the legislature is paramount. *State v. Rome*, 96-0991, pp. 3-4 (La. 7/1/97), 696 So. 2d 976, 978.